UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHADI YADEGAR<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-01128-MWF (RAOx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter came on for trial before the Court sitting without a jury on July 15, September 30, and October 3, 2025. Following the presentation of evidence and the parties' closing arguments, the matter was taken under submission.

Having carefully reviewed the record and the arguments of counsel, as presented at the trial and in their written submissions, the Court now makes the following findings of fact and reaches the following conclusions of law under Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact that constitutes a conclusion of law is also hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is also hereby adopted as a finding of fact.

The following witnesses were called and examined by the parties in the order recited below:

On July 15, 2025, Setareh Panah appeared on behalf of Plaintiff Shadi Yadegar and gave an opening statement.  Zakariya K. Varshovi and David Pinchas appeared on behalf of Defendant United States of America.  Mr. Varshovi gave an opening statement.

On the same day, following opening statements, Ms. Panah examined Plaintiff **Shadi Yadegar**, the front-seat passenger in the BMW vehicle that collided with the government vehicle.  Defense counsel cross-examined Ms. Yadegar.  Ms. Panah re-examined Ms. Yadegar.

Next, Ms. Panah examined **Masoud Masjedi**, Esq., Plaintiff's husband.  Defense counsel cross-examined Mr. Masjedi.  Ms. Panah re-examined Mr. Masjedi.

Next, Ms. Panah examined **Steven Foose**, the driver of the government vehicle involved in the collision.  Defense counsel examined Mr. Foose.

Next, Ms. Panah read the transcript of the deposition of **Israel Sanowicz**, the rear-seat passenger in the BMW.

On September 30, 2025, Ms. Panah examined **Arthur Kreitenberg**, M.D., an orthopedic surgeon who treated Plaintiff for her wrist fracture.  Defense counsel cross-examined Dr. Kreitenberg.  Ms. Panah re-examined Dr. Kreitenberg.

Next, Ms. Panah examined **Phillip Salzman**, an eyewitness who was driving behind the BMW and observed the accident.  Defense counsel cross-examined Mr. Salzman.  Ms. Panah re-examined Mr. Salzman.

Next, Ms. Panah examined **Kourosh Noorman**, M.D., a pain-management specialist who administered care to Plaintiff.  Defense counsel cross-examined Dr. Noorman.

Next, Ms. Panah examined **Alfred Derakhshesh**, M.D., a medical provider who also evaluated and treated Plaintiff.  Defense counsel cross-examined Dr. Derakhshesh.

Next, Ms. Panah examined **Roy Kimia**, a physical-therapy and acupuncture provider who treated Plaintiff.  Defense counsel cross-examined Mr. Kimia.  Ms. Panah re-examined Mr. Kimia.

On October 3, 2025, defense counsel examined **Brian Rudin**, M.D., an orthopedic surgeon retained as a medical expert.  Ms. Panah cross-examined Dr. Rudin.

Next, defense counsel examined **Yosef Percia**, the driver of the BMW in which Plaintiff was a passenger.  Ms. Panah examined Mr. Percia.

Next, defense counsel examined **Jason Snibbe**, M.D., orthopedic surgeon and defense expert who examined Plaintiff regarding her right wrist and shoulder  Ms. Panah cross-examined Dr. Snibbe.  Defense counsel re-examined Dr. Snibbe.

On the same day, Ms. Panah made her closing argument for Plaintiff.  Mr. Varshovi made his closing argument for Defendant.

## I.    FINDINGS OF FACT

**A. The Accident**

1.    This action concerns a car accident which occurred on August 16, 2020, on the Interstate 405 freeway in Los Angeles, California.

2.    Yosef Percia was driving his BMW sedan northbound in the leftmost lane — the HOV lane — with Plaintiff in the right-front passenger seat and Israel Sanowicz in the back seat.

3.    In the lane to the immediate right of the HOV lane was Steven Foose, a U.S. Navy servicemember, who was driving a Hyundai.  Mr. Foose was a recruiting officer returning to the U.S. Navy base at Port Hueneme, California.  The Hyundai was a government vehicle, and Mr. Foose was acting in the scope of his employment with the U.S. Navy while driving.

4.    Mr. Foose testified that he was traveling with the flow of traffic at approximately 65 miles per hour and maintaining five car lengths between his vehicle and the vehicle in front of him.

5.    Shortly before the collision, an object — later identified as a mattress — fell off an unknown vehicle and landed in the lane in which Mr. Foose was driving.  The driver of the vehicle carrying the mattress did not stop and remains unidentified.

6.    There were two vehicles between Mr. Foose's vehicle and the mattress.  One vehicle drove over the mattress, while the other braked abruptly to avoid it.  Mr. Foose testified that the second vehicle's tires screeched as it came to a sudden stop.

7.    Mr. Foose testified that he began to apply his brakes as well, but quickly determined that he could not stop in time without colliding with the vehicle ahead.

8.    Mr. Foose testified that he looked to his right and noticed that traffic in the lane to his right was slowing.  He then looked to the lane to his left, including his blind spot, and did not see Mr. Percia's BMW prior to the lane change.  He then executed what he described as an emergency lane change into that lane.

9.    Mr. Foose cleared the lane change, but his vehicle overshot and continued toward the freeway median.  Mr. Foose attempted to straighten his vehicle which began to fishtail.  As he attempted to regain control, Mr. Percia's vehicle rear-ended Mr. Foose's vehicle.

10.    Mr. Foose testified that he could not have come to a safe stop and that a lane change was necessary.  Mr. Foose also testified that he did not see Mr. Percia's vehicle at any point prior to the collision.

11.    Plaintiff testified that she did not see Mr. Foose's vehicle until it was in front of Mr. Percia's vehicle.  Plaintiff further testified that she also did not see the mattress.

12.    Mr. Percia testified that he did not see the mattress until a few seconds before the accident.  Mr. Percia observed other vehicles in between Mr. Foose's car and the mattress, and that Mr. Foose swerved into his lane.  Mr. Percia testified that he was unable to avoid the collision with Mr. Foose.

13.    Phillip Salzman testified that he was driving in the HOV lane directly behind Mr. Percia's BMW.  Mr. Salzman testified that he saw the mattress fall into Mr. Foose's lane and observed Mr. Foose slow down and then swerve into Mr. Percia's lane.  Mr. Salzman did not observe a car between Mr. Foose and the mattress.  Mr. Salzman testified that Mr. Percia appeared to slow his vehicle but could not have avoided the collision with Mr. Foose.

14.     The point of impact on Mr. Foose's vehicle was on the rear driver's side, and the corresponding point of impact on Mr. Percia's vehicle was on the front passenger's side.

**B. <u>Post-Accident Medical Care and Injuries</u>**

15.     Immediately after the collision, Plaintiff reported shock and pain in her right wrist.

16.     Plaintiff was assessed at the scene by California Highway Patrol and the Los Angeles Fire Department.

17.     Plaintiff was transported to UCLA Medical Center's emergency department by ambulance.  There, Plaintiff was examined for her complaints of pain.  Plaintiff was diagnosed with a closed fracture at her right wrist, and a splint was applied.

18.     Plaintiff later received chiropractic treatments at New Wave Health Center from Dr. Alfred Derakhshesh.

19.     Plaintiff attended a follow-up appointment with Arthur Kreitenberg, M.D., an orthopedic surgeon, for her complaints regarding her wrist.  Dr. Kreitenberg examined Plaintiff, ordered various tests, and instructed Plaintiff to undertake physical therapy.

20.     Plaintiff was referred to Christopher Zahiri, M.D., who examined Plaintiff and recommended physical therapy and electromyography and nerve conduction studies.

21.     Plaintiff was further referred to Kevin Aminian, M.D., for those studies, which were conducted and displayed normal results.

22.     Plaintiff received physical therapy treatment and acupuncture from Kimia Wellness.  Mr. Roy Kimia testified as to these treatments.

23.     Plaintiff saw Kourosh Noormand, M.D., for a pain management consultation regarding shoulder pain.  Dr. Noormand recommended and conducted a platelet-rich plasma (PRP) injection in Plaintiff's right shoulder.

24.     The Court heard testimony from Defendant's rebuttal experts, Jason Snibbe, M.D., and Brian Rudin, M.D., who are both orthopedic surgeons.  Dr. Snibbe and Dr.

Rudin testified that while Plaintiff sustained several injuries, she recovered from all such injuries at the latest by approximately October 2020.

25.    Plaintiff and Masoud Masjedi, her husband, both testified as to how Plaintiff's injuries affected her personal life and activities, including interfering with her ability to cook, clean, and attend to personal hygiene.

26.    There is no dispute that Plaintiff has since recovered from her injuries as a result of the accident and does not seek to recover for future medical care.

**C.  The Court's Findings**

Based on the foregoing testimony and evidence, and applying the California "sudden emergency doctrine" as set forth in Conclusions Nos. 41–42, the Court now specifically **FINDS** as follows:

27.    The evidence demonstrates that Mr. Foose was confronted with a sudden emergency when the vehicle ahead of his slammed on its brakes and attempted to come to a complete stop to avoid the mattress.

28.    Mr. Foose did not behave negligently in creating the emergency by, for example, speeding or following too closely to the vehicle ahead of his in violation of California Vehicle Code sections 22350 and 21703.  Mr. Foose's unrebutted testimony was that he was travelling with the flow of traffic and five car lengths behind the vehicle. There is no evidence, let alone a preponderance of evidence, to the contrary.

29.    Instead, the emergency was caused by the falling mattress and the sudden stop of the vehicle ahead of Mr. Foose.

30.    Mr. Foose's response to the emergency was reasonable under the circumstances.  Mr. Foose's unrebutted testimony is that he was unable to come to a complete stop in time to avoid hitting the vehicle in front of him.  Further, traffic to his right was slowing or stopped, and Mr. Foose looked over his left shoulder and confirmed the HOV lane was clear before proceeding to that lane.

31.     The brief fishtailing of Mr. Foose's vehicle does not compel a different
conclusion; it reflects the difficulty of maintaining traction during an emergency
maneuver conducted at freeway speed.

32.     No witness — including Mr. Percia, Mr. Salzman, or Plaintiff — testified
that Mr. Foose's lane change was unnecessary or unsafe.  The testimony uniformly
described a rapid series of events that left no meaningful time for a different response.

33.     To the extent there are implicit issues of credibility between the recollections
of Ms. Yadegar, Mr. Percia, or Mr. Salzman, on the one hand, and Mr. Foose, on the
other, the Court resolves all such differences in favor of the testimony of Mr. Foose.

34.     The Court therefore **FINDS** that Mr. Foose acted as a reasonably prudent
driver would have acted under similar emergency circumstances.

## II.     CONCLUSIONS OF LAW

35.     Plaintiff asserts a single claim for negligence under the Federal Tort Claims
Act ("FTCA"), alleging that Mr. Foose negligently operated his vehicle, resulting in
Plaintiff's injuries.

36.     Liability under the FTCA is determined by reference to California law for
claims arising from acts or omissions that occurred in California.  *See* 28 U.S.C. §
1346(b)(1); *Molzof v. United States*, 502 U.S. 301, 305 (1992).

37.     Under California law, to establish negligence, Plaintiff must prove by a
preponderance of the evidence that the Defendant had a legal duty to use due care, that
Defendant breached such a legal duty, that Plaintiff was harmed, and that Defendant's
negligence was a substantial factor in causing Plaintiff's harm.  *Ladd v. Cty. of San Mateo*,
12 Cal. 4th 913, 917, 50 Cal. Rptr. 2d 309 (1996); *see also* CACI No. 400, Negligence.

38.     "A failure to use reasonable care in driving a vehicle is negligence."  CACI
No. 700, Basic Standard of Care.  "Drivers must keep a lookout for pedestrians, obstacles,
and other vehicles. They must also control the speed and movement of their vehicles." *Id.*

39.     Additionally, violations of the California Vehicle Code may give rise to a
presumption of negligence as negligence per se.  Negligence per se is an evidentiary

doctrine under which the "violation of a statute gives rise to a presumption of negligence in the absence of justification or excuse." *Ramirez v. Nelson*, 44 Cal. 4th 908, 918 (2008). To establish negligence per se, a plaintiff must prove (1) the defendant violated a statute, ordinance, or regulation, and (2) the violation was a substantial factor in bringing about the harm. CACI No. 418, Presumption of Negligence Per Se. The presumption of negligence may be rebutted "by proof that the person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." Cal. Evid. Code § 669(b).

40. Pursuant to California Vehicle Code section 22107, a driver must use reasonable care when changing lanes. CACI 705, Turning; *see also Butigan v. Yellow Cab Co.*, 49 Cal. 2d 652, 656, 320 P.2d 500 (1958) (Section 22107 "does not require the driver to know that a turn can be made with safety but only that he must exercise reasonable care[.]"). Driving at an unreasonable speed or following too closely in violation of California Vehicle Code sections 21703 and 22350 is also negligence per se. CACI No. 706, Basic Speed Law; *see also Hert v. Firestone Tire & Rubber Co.*, 4 Cal. App. 2d 598, 599, 41 P.2d 369 (1935).

41. California negligence law also includes a well-established "sudden emergency" doctrine, which "shields a defendant from liability in a negligence action." *Shiver v. Laramee*, 24 Cal. App. 5th 395, 397, 234 Cal. Rptr. 3d 256 (2018), *as modified* (July 11, 2018); CACI No. 452, Sudden Emergency. Under the doctrine, "a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in the calmer and more deliberate moments." *Leo v. Dunham*, 41 Cal. 2d 712, 714 (1953); *Abdulkhadhim v. Wu*, 53 Cal. App. 5th 298, 301–02, 266 Cal. Rptr. 3d 636 (2020) (affirming summary judgment to defendant because "[a] freeway driver with the right of way is not required to anticipate an

act . . . that unexpectedly causes merging traffic in front of him to come to almost a dead stop").

42.    The defense of sudden emergency is not available to a driver whose negligence brought on the emergency or who has not used due care to avoid the emergency. *Pittman v. Boiven*, 249 Cal. App. 2d 207, 216, 57 Cal. Rptr. 319 (1967).

### III.    VERDICT

The Court **FINDS** and **RULES** as follows:

The verdict is returned in favor of Defendant the United States of America.  A separate judgment shall issue on January 12, 2026.  Any deadline arising from the filing of these Findings of Fact and Conclusion of Law is **CONTINUED** to that date.

Dated:  December 22, 2025

MICHAEL W. FITZGERALD
United States District Judge